# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

VERONICA L.,[1]

     *Plaintiff*,

           v.

FRANK BISIGNANO,[2] COMMISSIONER OF SOCIAL SECURITY,

     *Defendants*.

Case No. 1:24-cv-06205
Hon. Beth W. Jantz

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Veronica L.'s application for supplemental security income ("SSI") and Disability Insurance Benefits ("DIB"). The Parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). For the reasons that follow, Plaintiff's Brief in Support of Reversal and Remand (Dkt. 13) is GRANTED, and the Commissioner's Motion for Summary Judgment (Dkt. 19) is DENIED. The Commissioner's decision is reversed, and this matter is remanded for further proceedings, consistent with this Memorandum Opinion and Order.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.
[2] Pursuant to Federal Rule of Civil Procedure 25(d), Frank Bisignano has been substituted for his predecessor.

## I.     BACKGROUND

On April 27, 2018, Plaintiff filed an application for SSI, alleging disability beginning on March 30, 2010. R. 17. Plaintiff later amended her onset date to October 20, 2020. R. 22, 26. Plaintiff's claim was denied initially and upon reconsideration. *Id.* A hearing was held before an Administrative Law Judge ("ALJ") on August 3, 2023. R. 17, 36. The ALJ denied Plaintiff's claim on October 31, 2023. R. 14–36. The Appeals Council denied Plaintiff's request for review on May 29, 2024, R. 1–6, making the ALJ's decision the final decision of the Commissioner, reviewable by the District Court under 42 U.S.C. §405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

Plaintiff claims she has multiple mental impairments. The ALJ's opinion followed the five-step analytical process required by 20 C.F.R. § 404.1520. R. 14–36. The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity during the relevant period. R. 19. At step two, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia, obesity, and osteoarthritis of the knees. R. 20 (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)). The ALJ concluded at step three that Plaintiff's medically determinable mental impairments of depressive disorder and an anxiety disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe. R. 18–22. Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to: "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can never climb ladders, ropes or scaffolds and she can occasionally climb ramps and stairs. The claimant can occasionally stoop and never kneel, crouch or crawl. The claimant can have no concentrated exposure to vibrations, and she cannot work around unprotected heights or unprotected dangerous moving machinery." R. 25. At step four, the ALJ found that Plaintiff could return to her past relevant work. R. 36. The RFC did

2

not include any accommodations for the claimant's mental impairments. At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. R. 36. The ALJ then concluded that Plaintiff was not disabled under the Social Security Act. R. 36.

## II. LEGAL STANDARDS

### A. Standard of Review

The Court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence. *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Biestek v. Berryhill*, 587 U.S. 97 (2019)). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014). While reviewing the Commissioner's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell*, 97 F.4th at 1052–53 (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). On the other hand, the Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also* 42 U.S.C. § 405(g).

### B. Review of Findings at Step 2

The claimant bears the burden of establishing a severe impairment. 20 C.F.R. § 404.1512; *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010). The Psychiatric Review Technique (PRT) at step 2 and the mental RFC inquiry at step 3 are distinct and serve different purposes, as the

3

limitations in the Paragraph B criteria (utilized in the PRT inquiry) are specifically not a residual functional capacity assessment. Rather, "paragraph B" criteria are used to rate the severity of mental impairments, not determine a claimant's ability to work. SOCIAL SECURITY RULING ("SSR") 96–8p, 1996 WL 374184, at *4 (S.S.A. July 2, 1996). In other words, paragraph B criteria are used to determine whether an impairment is "severe" at step 2 and whether the impairment meets a listing at step 3. *Id.* The inquiry at step 2 is "de minimis" and designed to "dispose of groundless claims." See *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016) (quoting *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016)).

### III.     DISCUSSION

Plaintiff argues in favor of remand:

> The ALJ erred at Step Two in finding that Plaintiff's depressive disorder and anxiety disorder were not "severe" and ultimately failed to include limitations from these impairments in Plaintiff's residual functional capacity at Step Four and Step Five.

Dkt. 13 at 1. Per Plaintiff, because the ALJ erred in this way, her opinion is not based on substantial evidence. Dkt. 13 at 7. The Court agrees with Plaintiff and REMANDS this case, for the following reasons.

### A.  The ALJ Impermissibly Played Doctor When Considering Dr. Tarson's Opinions

At step two, the ALJ rejected Dr. Tarson's opinion in finding that Plaintiff was not severely disabled. Plaintiff argues that the ALJ impermissibly cherry-picked portions of Dr. Tarson's opinions, who consistently opined that Plaintiff had mental health impairments. Dkt. 21 at 6. By not looking at all of Dr. Tarson's opinions, per Plaintiff, the ALJ impermissibly "played doctor." Dkt. 21 at 5. The Commissioner, on the other hand, argues that Dr. Tarson's opinions support the ALJ's findings, and notes that Dr. Tarson "repeatedly observed [P]laintiff's normal concentration and attention." Dkt. 20 at 5 (citing R. 24).

The Seventh Circuit has cautioned ALJs "not [to] succumb to the temptation to play doctor." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996); *see also Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2012). An ALJ impermissibly plays doctor when the ALJ either rejects a doctor's medical conclusion without other evidence, or when the ALJ draws medical conclusions themselves about a claimant without relying on medical evidence. *Dixon v. Massanari*, 270 F.3d 117, 1177 (7th Cir. 2001); *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000). The risk of 'playing doctor' is particularly acute in the area of mental health. *See Rohan*, 98 F.3d at 970. For instance, in *Wilder v. Chater*, the Seventh Circuit explained:

> Severe depression is not the blues. It is a mental illness; and health professionals, in particular psychiatrists, not lawyers or judges, are the experts on it. . . . . [A claimant] is entitled to a decision based on the record rather than on a hunch. The salient fact of record is the testimony of the psychiatrist, a disinterested as well as expert witness. Everything else is rank conjecture.

64 F.3d 335, 337–38 (7th Cir. 1995); *Rohan*, 98 F.3d at 970. An ALJ cannot rely on their lay person "hunch" and rather, must weigh the evidence, draw appropriate inferences from the evidence, and, where necessary, resolve conflicting medical evidence. *Pinter v. Colvin*, No. 1:14-CV-03863, 2015 WL 3855606, at *10 (N.D. Ill. June 22, 2015) (citing *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004)).

Plaintiff argues that the ALJ here "played doctor":

> The ALJ inexplicably drew a negative inference from the fact that doctors treating Plaintiff's physical ailments had not commented on her concentration, memory, or social functioning. The ALJ seized on Dr. Tarson's observations that Plaintiff's "attention, concentration, thought process and thought content were normal," yet she ignored Dr. Tarson's further observations that Plaintiff was repeatedly showing signs of being depressed, anxious, mildly dysphoric, and irritable on countless occasions, as indicated above. Overall, the ALJ was wrong to conclude, despite the plethora of evidence to the contrary, that Plaintiff's depression was not severe.

Dkt. 21 at 6 (citations omitted).

The Commissioner argues that "the ALJ [] noted that Dr. Tarson routinely recorded normal affect, thought process, judgment, attention, and concentration, including in March and May 2023." Dkt. 20 at 8. Per the Commissioner, these statements from Dr. Tarson contradict Plaintiff's argument that she is substantially impaired.

The ALJ seizing on these statements above about concentration is an example of the ALJ impermissibly playing doctor. The ALJ assumes that "normal concentration and attention" are incompatible with ailments like a major depressive disorder. She states that Dr. Tarson's notes "seem to be inconsistent or contradictory" because "he noted anxiety partially improved, but with intermittent hypomanic symptoms (racing thoughts, decreased need for sleep), but for the mental status exam on that date he noted euthymic and anxious mood." R. 22 (citations and quotations removed). But, the ALJ does not explain why these notes are inconsistent, nor cite to any medical basis for that conclusion. This is nothing more than a "hunch" based on a lay understanding and thus constitutes the ALJ playing doctor. *See, e.g.*, *Rohan*, 98 F.3d at 970–71 (an ALJ may not make independent medical findings regarding whether certain activities are inconsistent with a particular medical diagnosis).

For these reasons, to the extent that the ALJ relied on her rejection of Dr. Tarson's opinion to support her findings, it was error.

### B.  The State Agency Psychologist Opinions Do Not Support The ALJ's Decision

Regarding the State Agency psychologist opinions of Dr. Donna Galassi-Hudspeth and Dr. Keith Burton, the Commissioner argues that, even if the ALJ erred in rejecting Dr. Tarson's opinion, these two opinions provide substantial evidence to support the ALJ's opinion. Dkt. 20 at 9 (citing R. 74, 93–94).

These opinions do not provide sufficient support, however, for the ALJ's lay assumption, because these opinions constitute mere *ipse dixit*. Plaintiff points out that these are opinions of

"psychologists who did not even examine, let alone treat, Plaintiff." Dkt. 21 at 6. While an expert does not have to examine a claimant to opine on aspects of their care, the expert must provide more than *ipse dixit*. *Larson v. Colvin*, 26 F. Supp. 3d 798, 811 (N.D. Ill. 2014) (citing *General Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997)) (the ALJ has a responsibility to explain the medical evidence in the context of a plaintiff's claims; simply summarizing the evidence and saying that it doesn't support plaintiff's allegations is insufficient. This is mere *ipse dixit* which is not acceptable from either an expert or an ALJ).

Dr. Galassi-Hudspeth does not provide a sufficient discussion about Plaintiff's mental health. Dr. Galassi-Hudspeth states that "[Plaintiff's] mental status is intact[,] per treating source" and lists multiple dates and appointments with no explanation for how the underlying exams were considered. R.74. While Dr. Galassi-Hudspeth states that a "treating source" concluded that claimant's mental status is intact, it is not readily apparent to which treating source she is referring. Dr. Galassi-Hudspeth's analysis appears to be no more than a summary statement that Plaintiff does not have significant functional limitations nor a severe impairment. To make matters worse, this conclusory statement is apparently based on another treater's analysis, but she does not clarify to which treater she is referring. Without knowing what treater originally made this analysis, her opinion is mere *ipse dixit*. *See Larson*, 26 F. Supp.3d at 811.

For the same reasons, Dr. Burton's mostly identical statement that "[Plaintiff's] mental status is intact[,] per treating source," R. 93, is also impermissible *ipse dixit* and not his own medical opinion. *See Larson*, 26 F. Supp.3d at 811. And by relying on the *ipse dixit* of an expert, the ALJ's opinion was no more than *ipse dixit* itself. *Id*.

Both opinions opined (almost identically) that "[i]t is reasonable for the claimant to have symptoms of anxiety/depression secondary to life circumstances" to apparently attempt to help

support the conclusion that, "[t]hese symptoms do not cause significant functional limitations." *See* R. 74; 93. However, these opinions did not build or analyze a connection between the symptoms that Plaintiff exhibited and the provider(s)' conclusions. *Id*. Instead, the opinions rely on the conclusory statements that an unidentified treating source concluded that Plaintiff had an intact mental status. This summary of another provider's opinion, without even specifying from whom it comes, is not enough for the ALJ to rely on. Because the ALJ relied on these conclusory statements, the ALJ's opinion was no more than an impermissible conclusory summary of the evidence. *See Larson*, 26 F. Supp.3d at 811 (a conclusory summary of medical evidence is insufficient). Because it is unclear what the experts relied on to reach their conclusions, it was improper for the ALJ to rely upon them. *See Frazier v. Berryhill*, No. 17 C 8484, 2019 WL 157911, at *6 (N.D. Ill. Jan. 10, 2019) (it must be clear what evidence the ALJ relies on for their conclusion).

The ALJ had a responsibility to support her conclusions with competent medical evidence, but she did not. *See Dixon*, 270 F.3d at 1177; *Green*, 204 F.3d at 781. The State Agency psychologist opinions do not provide the ALJ with substantial evidence. All that is left is the ALJ's lay assumptions. This is error.

### C.  The Error Is Not Harmless

An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work. 20 C.F.R. § 404.1520(c). An ALJ's failure to account for a severe impairment at step two of the sequential analysis is harmless so long as the ALJ continues to the next step *and* considers the aggregate effects of all the claimant's limitations. *Castile*, 617 F.3d at 927. Here, the ALJ found that no listed impairment existed, so did not account for any such impairment in the RFC at all. R. 25. Thus, this error is not harmless because it may have resulted in a different RFC.

Finally, the Court notes that it is not impermissibly reweighing the evidence. It might be the case that Plaintiff does not have a severe mental impairment. However, the ALJ did not point to any sufficient evidence on this record to rebut Plaintiff's argument and evidence that she does. To the extent that the evidence on the record might be sufficient, the ALJ also impermissibly played doctor and reached her conclusions based on her own lay assumptions regarding mental impairments, rather than competent medical testimony. *See Villano v. Astrue*, 556 F.3d 558, 563 (remanding case where ALJ made an improper inference that "does not give [the Court] confidence that [s]he had appropriate reasons for rejecting the limitations").

## IV. CONCLUSION

For these reasons, Plaintiff's Brief in Support of Reversal and Remand (Dkt. 13) is GRANTED, and the Commissioner's Motion for Summary Judgment (Dkt. 19) is DENIED. The Commissioner's decision is reversed, and this matter is remanded for further proceedings, consistent with this Memorandum Opinion and Order.

SO ORDERED.

DATED: March 30, 2026

_____

HON. BETH W. JANTZ

United States Magistrate Judge

9